MICHEL, Circuit Judge.
 

 The Secretary of Veterans Affairs appeals the decision of the Court of Veterans Appeals setting aside the Secretary’s recision of 1150.13(b) of the Veterans Administration (currently the Department of Veterans Affairs) (VA) Adjudication Procedure Manual, M21-1, as being unlawful.
 
 Fugere v. Derwinski,
 
 1 Vet.App. 103 (1990). The Court of Veterans Appeals determined that the Secretary’s recision of 1150.13(b) violated both the provisions of the Administrative Procedure Act (APA) and the Secretary’s own regulations regarding notice and an opportunity to comment on rule changes. As a result, pursuant to 38 U.S.C. § 4061(a)(3)(D) (1988)
 
 redesignated as
 
 38 U.S.C.A. § 7261(a)(3)(D) (West 1991), the Court of Veterans Appeals set aside the Secretary’s recision of 1150.13(b) as being “without observance of procedure required by law.” We affirm.
 

 BACKGROUND
 

 Oscar G. Fugere, a World War II veteran, received benefits for service connected bilateral defective hearing at a disability rating of twenty percent from November 1955 to July 1974.
 
 Fugere,
 
 1 Vet.App. at 104. After July 1974, Fugere received benefits for his defective hearing at a disability rating of thirty percent.
 
 Id.
 
 On November 18, 1987, the VA established new criteria for rating defective hearing and published them in the Federal Register.
 
 Id.
 
 However, ¶ 50.13(b) of the VA Adjudication Procedure Manual instructed adjudi
 
 *333
 
 cators as follows: “If the decrease in evaluation is due to changed criteria or testing methods, rather than a change in disability, apply the old criteria and make no reduction [in the disability rating].”
 
 Id.
 

 On August 31, 1988, Fugere reopened his claim on the ground that additional hearing loss was found to exist during a VA hearing aid examination on August 25, 1988.
 
 Id.
 
 Fugere was retested for purposes of his claim ón November 8, 1988. Applying the new criteria, Fugere’s condition resulted in a ten percent disability rating.
 
 Id.
 
 at 104-05. However, the provisions of 1150.-13(b) would have preserved Fugere’s thirty percent rating.
 
 Id.
 

 In an opinion. dated October 27, 1988 (published on January 30, 1989), “the VA General Counsel opined that [¶ 50.13(b) ] ‘contravenes the [Secretary’s] statutory authority’ because it ‘establishes] dual rating schedules for evaluating hearing impairment.’ ”
 
 Id.
 
 at 109 (quoting from Op. G.C. 11-88 (VA Jan. 30, 1989)). In response to this advisory opinion, on November 23, 1988, the VA Chief Benefits Director rescinded 1150.13(b) in an internal memo to the Regional Office Directors.
 
 Id.
 
 at 104-05 and 109. The Court of Veterans Appeals found that:
 

 The Regional Office Directors were instructed to implement the new policy as follows: 1) before scheduling an examination, a veteran must be informed of the possibility of a decrease in rating; 2) if an examination was scheduled but not yet conducted, a veteran was to be informed of the possibility of a decrease in rating and given the opportunity to withdraw the claim; and 3) if an examination had already taken place, no notice would be given to the veteran and the new rating criteria would be applied “regardless of the advice previously provided to the veteran.”
 

 Id.
 
 at 105. The court also found that Fug-ere was in the third category which afforded no notice to a veteran that the new criteria would be applied even if the new criteria resulted in a decrease in the veteran’s disability rating.
 
 Id.
 

 In its December 5, 1988 decision, the VA found Fugere to be entitled only to a ten percent disability rating.
 
 Id.
 
 However, Fugere could not be rated below twenty percent pursuant to 38 U.S.C.A. § 110 (West 1991) and 38 C.F.R. § 3.951 (1991).
 
 [1]
 

 Id.
 
 In an August 15, 1989 decision, the Board of Veterans Appeals (BVA) affirmed the VA’s decision. But, in an October 16, 1990 decision, the Court of Veterans Appeals reversed the BVA. After the Secretary filed a motion for review
 
 en banc,
 
 the issuing panel vacated the earlier decision and issued in its stead the decision dated December 27, 1990. The Secretary then filed this appeal.
 

 The Court of Veterans Appeals found that if 50.13(b) was a substantive rule within the meaning of the APA and at common law.
 
 Id.
 
 at 107. The court concluded that the VA adopted the requirements of the APA by a regulation in effect since 1972 and codified at 38 C.F.R. § 1.12 (1991).
 
 [2]
 

 Id.
 
 In addition, the court noted that 38 C.F.R. § 1.551 (1991)
 
 [3]
 
 requires the Secre
 
 *334
 
 tary to give notice and an opportunity to comment on any proposed recision of a “substantive rule.”
 
 Id.
 
 at 108-09. The court then found that “[t]he unilateral action of the Secretary, taken without any notice to those in appellant’s situation, foreclosed any such opportunity [to comment].”
 
 Id.
 
 at 109. Since the APA and the Secretary’s own regulation at 38 C.F.R. § 1.551 direct the Secretary to give notice and an opportunity for comment on the proposed repeal of a substantive rule, the Court of Veterans Appeals set aside the recision of 1150.13(b) pursuant to 38 U.S.C.A. § 7261(a)(3)(D) (West 1991).
 
 [4]
 

 Id.
 
 at 110.
 

 I. JURISDICTION
 

 This court has jurisdiction to review a decision of the Court of Veterans Appeals with respect to both the validity of any statute or regulation and any interpretation thereof that the Court of Veterans Appeals relied upon in its decision. 38 U.S.C.A. § 7292(a) (West 1991). Our jurisdiction does not extend to challenges either to factual determinations or to the law as applied to the facts of a particular case. 38 U.S.C.A. § 7292(d)(2) (West 1991). The government appeals the decision of the Court of Veterans Appeals on the grounds that it is based on invalid interpretations of 38 U.S.C.A. § 1155 (West 1991) (formerly § 355) and 1150.13(b). The government is correct because the award to Fugere is necessarily based on the conclusion that 1150.13(b) does not violate § 1155. Therefore, we have jurisdiction over this appeal.
 

 The Secretary, however, questions the Court of Veterans Appeals’ exercise of jurisdiction as violative of 38 U.S.C.A. § 7252(b) (West 1991), which prohibits “review [of] the schedule of ratings for disabilities adopted under section 1155 of this title or any action of the Secretary in adopting or revising that schedule.”
 
 [5]
 
 The Secretary contends that if If 50.13(b) is a part of the “schedule of ratings ... or [an] action of the Secretary in adopting or revising that schedule,” then the Court of Veterans Appeals was without jurisdiction to hear Fug-ere’s appeal.
 
 [6]
 
 But the Secretary misconceives the import of § 7252(b).
 

 We need not decide, for purposes of jurisdiction, whether H 50.13(b) is a part of the “schedule of ratings” since the Court of Veterans Appeals did not review H 50.13(b) or its application, but merely the procedure by which it was repealed. Given the ex
 
 *335
 
 press mandate of § 7261 that the Court of Veterans Appeals is to set aside an action of the Secretary in violation of procedures required by law, it is plain that § 7252(b) only prohibits review of the substance of the Secretary’s action with respect to the schedule of ratings. The Court of Veterans Appeals may not second guess the Secretary as to what the schedule should contain. In the present case, neither party contends that the Secretary could not repeal 1150.13(b). Both parties, in fact, agree that the Secretary has broad powers to promulgate rules and regulations with respect to the disability rating schedule. What the Court of Veterans Appeals reviewed was the
 
 manner
 
 in which the Secretary repealed 1150.13(b). Therefore, we hold that § 7252(b) did not deprive the Court of Veterans Appeals of jurisdiction.
 

 II. WHETHER 1150.13(b) OF THE VA ADJUDICATION PROCEDURE MANUAL IS CONSISTENT WITH 38 U.S.C.A. § 1155
 

 To prevail upon appeal, the government must show that 38 U.S.C.A. § 1155 provides only for a single schedule and that II 50.13(b) of the VA Adjudication Procedure Manual creates a dual schedule in violation of the statute.
 
 [7]
 

 When Fugere reopened his claim, § 355 (currently § 1155) provided (as it does today): “The Administrator [now Secretary] shall adopt and apply
 
 a
 
 schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries.” 38 U.S.C. § 355 (1988) (emphasis added). It is the Secretary’s position that the
 
 “a
 
 schedule” language of § 1155 “clearly indicates that Congress intended that, absent explicit authorization, no more than one rating schedule should be provided per type of injury.” It is also the Secretary’s position that 1150.13(b) of the VA Adjudication Procedure Manual creates a dual rating schedule: “one for claimants who had been rated prior to [the adoption of the new hearing criteria] and a second [for claimants] who received ratings for the first time after [the adoption of the new hearing criteria].”
 

 However, we do not read 1150.13(b) as creating two schedules. A schedule, within the meaning of § 1155, is a means by which the Secretary or his designees may determine what rating of reduction in earning capacity a claimant should be assigned based upon the nature and extent of the claimant’s injuries. Paragraph 50.13(b) of the VA Adjudication Procedure Manual, on the other hand, does not provide any means of determining a rating based upon the nature and extent of the claimant’s injuries. It merely allows a claimant to retain a previously determined rating under certain conditions. Therefore, ¶ 50.13(b) did not create a dual system of ratings as the Secretary asserts.
 

 Moreover, a recent amendment of § 1155, partially in response to the Secretary’s position,
 
 [8]
 
 further undermines the notion that 1150.13(b) conflicts with the plain meaning of § 1155. On August 14, 1991, Congress enacted Public Law 102-86, which amended 38 U.S.C.A. § 1155 by adding at the end of that statute the following:
 

 However, in no event shall such a readjustment in the rating schedule cause a veteran’s disability rating in effect on the effective date of the readjustment to be reduced unless an improvement in the veteran’s disability is shown to have occurred.
 

 While the congressional amendment only paraphrases 1150.13(b), it would, nevertheless, by the Secretary’s logic, create a dual schedule. If the Secretary’s interpretation of the “a schedule” language of § 1155 is correct, then there is an internal inconsist
 
 *336
 
 ency within the amended version of § 1155. Since we must assume that Congress does not write internally inconsistent statutes,
 
 see Markham v. Cabell,
 
 326 U.S. 404, 411, 66 S.Ct. 193, 196, 90 L.Ed. 165 (1945) (“[T]he normal assumption is that where Congress amends only one section of a law, leaving another untouched, the two were designed to function as parts of an integrated whole.”), we must conclude that either § 1155 permits more than one schedule or If 50.13(b) does not create a dual schedule, or both. In any event, the Secretary has failed to show that ¶ 50.13(b) of the VA Adjudication Procedure Manual, M21-1, is fatally inconsistent with 38 U.S.C.A. § 1155.
 

 CONCLUSION
 

 We hold that 1150.13(b) of the VA Adjudication Procedure Manual, M21-1, is consistent with 38 U.S.C.A. § 1155. Since we have jurisdiction and this is the only issue on the merits properly before the court, the decision of the Court of Veterans Appeals is
 

 AFFIRMED.
 

 [1]
 

 . Section 110 of Title 38 of the United States Code Annotated provides:
 

 A disability which has been continuously rated at or above any evaluation for twenty or more years for compensation purposes under laws administered by the Secretary shall not thereafter be rated at less than such evaluation, except upon a showing that such rating was based on fraud.
 

 Section 3.951 of Title 38 of the Code of Federal Regulations provides:
 

 A disability which has been continuously rated at or above any evaluation of disability for 20 or more years for compensation purposes under laws administered by the Department of Veterans Affairs will not be reduced to less than such evaluation except upon a showing that such rating was based on fraud.
 

 [2]
 

 . Section 1.12 of Title 38 of the Code of Federal Regulations provides in pertinent part:
 

 It is the policy of the Department of Veterans Affairs to afford the public general notice, published in the Federal Register, of proposed regulatory development, and an opportunity to participate in the regulatory development in accordance with the provisions of the Administrative Procedure Act.
 

 [3]
 

 . Section 1.551 of Title 38 of the Code of Federal Regulations provides in pertinent part:
 

 (b) Administration and Staff office heads will develop, with the approval of the Secretary, for submission by the Assistant Secretary for Planning and Evaluation to the Director of the Federal Register, for publication for the
 
 *334
 
 guidance of the public, Department of Veterans Affairs regulations containing:
 

 * * * * * *
 

 (3) Substantive rules of general applicability adopted by the Department of Veterans Affairs as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the Department of Veterans Affairs.
 

 (4) Every amendment, revision, or repeal of the foregoing.
 

 (c) Except to the extent that a person has actual and timely notice of the terms thereof, no person shall in any manner be required to resort to, or be adversely affected by any matter required by this section to be published in the Federal Register and not so published.
 

 [4]
 

 . Section 7261 of Title 38 of the United States Code Annotated provides in pertinent part:
 

 (a) In any action brought under this chapter, the Court of Veterans Appeals, to the extent necessary to its decision and when presented, shall—
 

 * * * * * *
 

 (3) hold unlawful and set aside decisions, Endings (other than those described in clause (4) of this subsection), conclusions, rules, and regulations issued or adopted by the Secretary, the Board of Veterans’ Appeals, or the Chairman of the Board found to be—
 

 * * * * * *
 

 (D) without observance of procedure required by law....
 

 [5]
 

 . While the government did not raise this jurisdictional challenge until its reply brief, challenges to subject matter jurisdiction are appropriate at any stage.
 
 Phillips v. General Servs. Admin.,
 
 924 F.2d 1577, 1579 (Fed.Cir.1991) ("A jurisdictional matter can be raised at any stage of a judicial proceeding by any party or by the court on its own motion.").
 

 [6]
 

 . Although the government has requested in its briefs that this court reverse the Court of Veterans Appeals, if the government’s premise is correct, we must vacate the Court of Veterans Appeals' decision rather than reverse.
 

 [7]
 

 . Although the Secretary in his opening brief alleged that the Court of Veterans Appeals’ decision violated Article I, § 9, cl. 7 of the United States Constitution, that conclusion depended on ¶ 50.13(b) being inconsistent with 38 U.S.C.A. § 1155 (formerly § 355). Since the Secretary raised no other issues on appeal, no other issues are properly before us.
 

 [8]
 

 . The Secretary’s reply brief cites legislative history of this recent amendment that suggests that the opinion of the VA General Counsel, Op. G.C. 11-88, which found ¶ 50.13(b) to be inconsistent with § 1155, was a motivating factor in enacting the amendment.